IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DENNIS COPEN,

      Plaintiff,

v.                                                            Case No. 2:25-cv-00152

PROSECUTOR JOSH DOWNEY,
OFFICER J.T. LANIER, and
SHERIFF PHILLIP DEVER,

      Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for to Dismiss, or in the alternative, Motion for Summary Judgment. [ECF No. 11]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN**, and I will proceed to rule on the motion.

I.    **Relevant Factual Background and Procedural History.**

On November 7, 2023, Plaintiff, who was driving a 2004 Ford Ranger pickup truck, was pulled over in a traffic stop by Roane County Deputy Sheriff, Lt. J.T. Lanier ("Lanier"), allegedly for a seatbelt violation. [ECF No. 2 at 8]. However, in the complaint, Plaintiff states that it was a cloudy day and his truck had 70% tint on the windows. [*Id.*] Plaintiff claims that, upon stopping him, Lanier asked to search

the vehicle, but Plaintiff did not consent. [*Id.*] Nonetheless, according to the complaint, after stating that Plaintiff "was a drug dealer [who] had been selling drugs in *his* county," Lanier handcuffed Plaintiff and searched the truck anyway, finding a pack of cigarettes containing a ½ gram of heroin. [*Id.*] Plaintiff denies that he asked Lanier to get his cigarettes out of the truck. [*Id.*]

Plaintiff further alleges that Lanier continued the search and "took a large amount of money from the truck and [him]." [*Id.*] Subsequently, Lanier transported Plaintiff to the Central Regional Jail ("CRJ") for booking, at which time additional money was found on his person. However, the parties dispute the total amount of money that was located and seized.

According to the complaint, a total of $8,000 was seized from Plaintiff (Plaintiff claims that $6,000 was seized from the truck; an additional $1,000 was seized from his pocket; and another $1,000 was seized from his boot during booking at the CRJ). Defendants, on the other hand, assert that $6,000 was seized ($5,000 from the truck and $1,000 from Plaintiff's boot at the CRJ). [ECF No. 2 at 8; ECF No. 12 at 2]. According to Defendants, the money was logged into evidence and then deposited into the "Roane County Sheriff's Asset Forfeiture Fund" account. [ECF No. 11, Exs. 7 & 8; ECF No. 12 at 3].

The complaint does not allege that any civil or criminal forfeiture proceedings were instituted, and it further alleges that "[t]here was never a hearing to determine the status of the money." [ECF No. 2 at 9]. However, Defendants' motion documents include an "Administrative Forfeiture Notice" as an exhibit. [ECF No. 11, Ex. 9].

2

According to that paperwork, the notice was faxed to the CRJ on November 13, 2023, but Plaintiff had been released on bond before receiving it. [*Id.*] Defendants further contend that "when service could not be ensured, the authorities simply maintained the seized cash until such time as Plaintiff provided details on where to send it, and upon being informed, promptly remitted the seized funds back to Plaintiff." [ECF No. 12 at 9].

On November 7, 2023, Plaintiff was charged by criminal complaint with driving on a suspended license, driving without a seatbelt, and possession of a controlled substance. [ECF No. 11, Ex. 1; ECF No. 12 at 2]. On November 8, 2023, a Roane County magistrate found probable cause for the charges. [*Id.*] On December 28, 2023, Plaintiff pled no contest, via a written plea agreement, to driving on a suspended license and was sentenced to pay a fine. All other charges were dismissed. [ECF No. 11, Exs. 2, 3, & 4; ECF No. 12 at 2].

Plaintiff alleges that he informed his criminal attorney, Keasha Maye ("Maye"), that the money he possessed came from the sale of his house and other acreage, and that he intended to use it to pay rent on storage units where he was keeping his personal property (an inventory of which is attached to the complaint as Ex. A). [ECF No. 2 at 8, n.3, and Ex. A]. Maye allegedly informed the prosecutor of the non-criminal origin of the funds; however, the money was not returned to Plaintiff until after a new prosecuting attorney took office more than a year later. [ECF No. 2 at 8-9]. Defendants' exhibits include a copy of a check dated March 7, 2025 made out to Plaintiff in the amount of $6,000 from the Roane County Sheriff's Asset Forfeiture

Fund, which was apparently sent to him at the Huttonsville Correctional Center ("HCC").[1]  [ECF No. 11, Ex. 10].  There is no allegation or evidence that, prior to return of the funds, Plaintiff filed a motion for return of the seized funds in his criminal action or initiated a civil action for conversion of the property.

Plaintiff alleges that the seizure of these funds caused him to lose all his personal property in the storage units (which, he claims, totaled over $23,000, and included his father's ashes and invaluable family photographs), because he could not pay the rent.  [ECF No. 2 at 8-9].  He further alleges that Defendants Lanier and Downey violated his due process rights by failing to return the seized currency and that Roane County Sheriff Phillip Dever ("Dever") failed to properly train, educate, and supervise Lanier in proper methods of vehicle stops and searches.  [*Id.*]

Although not specifically pled in the complaint, I further liberally construe the complaint to be alleging Fourth Amendment claims against Lanier grounded in illegal search and seizure and those claims have been addressed by Defendants in their motion documents.  I infer from Plaintiff's allegations concerning the tint on the windows of the truck and the cloudy conditions that day, which he further contends can be "readily seen" on dash and body camera footage, that he is alleging that Lanier could not have clearly observed whether he was wearing a seatbelt, which was the given basis for the traffic stop.  [ECF No. 2 at 8].  Thus, Plaintiff appears to contend that the traffic stop was pretextual.  The complaint further asserts that Plaintiff did not ask Lanier to get his cigarettes out of the truck.  [*Id.*]  Thus, I further infer that

---

[1] It is unclear why Plaintiff was incarcerated at HCC.  It was apparently for charges other than those related to this case, as Plaintiff was sentenced only to a fine for the suspended license charge.

Plaintiff is asserting that there was no valid, reasonable basis for the search of the vehicle and seizure of his property.

Defendants filed the instant motion and supportive memorandum of law on May 21, 2025. [ECF Nos. 11 & 12]. That same day, Magistrate Judge Tinsley entered an Order and Notice, pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of his right and obligation to respond to the motion and of the types of evidence that must be offered to overcome summary judgment, and setting deadlines for a response and reply. [ECF No. 14]. Magistrate Judge Tinsley's Order and Notice also advised Plaintiff that the failure to respond may result in the entry of summary judgment denying the relief sought in the complaint and it further advised him of his obligation to notify the Court and opposing parties of any changes in his contact information. [*Id.* at 2]. Thereafter, Plaintiff sought a 45-day extension of time to file his response, which was granted on June 18, 2025. [ECF Nos. 18 & 19]. Thus, Plaintiff's response was due on August 7, 2025. [ECF No. 18].

On August 4, 2025, Plaintiff filed a Notice of Change of Address advising that he had been released from custody and providing a new address. [ECF No. 20]. However, he did not file a timely response to Defendants' motion by August 7, 2025. Nonetheless, on August 21, 2025, the Clerk's Office received and docketed a "Verified Declaration" from an inmate named Tim Blevins ("Blevins"), indicating that he had been acting as a "legal clerk" for Plaintiff and that he had assisted Plaintiff in preparing a response to Defendants' motion, but Plaintiff was released before he

signed and filed the response. [ECF No. 21]. Blevins attached the unexecuted proposed response to his declaration and further indicated that he had sent a copy of it to Plaintiff. [*Id* at 2.; ECF No. 21-1]. Plaintiff never submitted an executed copy of his response and never moved for leave to file his response out of time.

On August 27, 2025, Defendants filed a reply brief asserting that Plaintiff's proposed response was untimely, not executed, and should not be considered by the Court. [ECF No. 22]. Additionally, Defendants argue that, even if the Court were to consider the fugitive response, it asserts new facts and theories that were not contained in the complaint and does not sufficiently rebut Defendants' arguments for dismissal. [*Id.*] This matter is ripe for resolution.

## II.    Standards of Review

### A.    *Conversion of motion to dismiss to motion for summary judgment.*

Defendants' motion was filed as a motion to dismiss or, in the alternative motion for summary judgment. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the allegations in the complaint and usually does not allow consideration of evidence outside of the complaint document, which is more appropriately considered in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. However, "Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion." *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004). It "only requires that a motion to dismiss be treated as a motion for summary judgment

6

when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.*

Nevertheless, a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . ." *Trigon Healthcare*, 367 F.3d at 234 (4th Cir. 2004) (internal quotations omitted). Thus, conversion of a motion to dismiss to a motion for summary judgment is discretionary. *See Camastro v. City of Wheeling*, 49 F. Supp. 2d 500, 502 (S.D.W. Va. 1998) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). However, Rule 12(d) dictates that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, I intend to rely on the exhibits provided by the parties, which address evidence that is not intrinsic or integral to the complaint. Moreover, pursuant to the holding in *Roseboro*, *supra*, 528 F.2d 309, Magistrate Judge Tinsley notified Plaintiff of the requirements for properly responding to a motion for summary judgement and gave him ample time to respond. Thus, I **FIND** that Plaintiff had sufficient notice of his obligations to oppose Defendants' motion, and sufficient opportunity to properly rebut Defendants' evidence, and I will treat the pending motion as one for summary

judgment addressed under Fed. R. Civ. P. 56. At least as to the claims for which I rely upon the extrinsic evidence.

B.    *Summary judgment*

A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

Summary judgment is appropriate when the nonmoving party does not sufficiently establish an essential element of his case on which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden by offering more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Id.* Thus, the

non-moving party may not rely on conclusory allegations or unsupported speculation. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

Additionally, video evidence that clearly contradicts unsupported allegations can be considered undisputed evidence sufficient to warrant summary judgment where "[the opposing party's] version of events is so utterly discredited by the record that no reasonable jury could have believed him." *See Scott v. Harris*, 530 U.S. 372, 380-81 (2007). I will discuss the video evidence presented herein in greater detail *infra.*

III.    **Discussion**

A.    *Plaintiff's untimely and unexecuted response brief.*

As noted above, Plaintiff was properly advised of his right and obligation to file a response to Defendants' motion for summary judgment. [ECF No. 14]. He was then granted a 45-day extension of time to file his response until August 7, 2025. [ECF No. 19]. However, he was subsequently released on parole and, despite this extension of time, he did not timely file a response. Instead, on August 21, 2025, the Clerk's Office received a "Verified Declaration" from another prisoner, Blevins, who had been acting as an inmate legal aide for Plaintiff, who indicated that he had assisted Plaintiff in drafting a response, but Plaintiff was released before signing and filing it. Blevins attached an unexecuted version of the proposed response to his declaration. [ECF No. 21 and 21-1]. Defendants have challenged the consideration of this untimely and fugitive response. [ECF No. 22].

9

Plaintiff did not move for another extension of time or leave to file his response out of time, and he never attempted to submit an executed copy thereof. I agree that the unexecuted and untimely proposed response submitted on Plaintiff's behalf by another prisoner [ECF No. 21-1] is not a valid response and should not be considered herein. Consequently, in ruling on Defendants' motion, I will only consider the Plaintiff's complaint [ECF No. 2], the Defendants' motion documents [ECF Nos. 11 & 12], and the exhibits attached to each [ECF Nos. 2-1 and 11-1 through 11-13].

B.    *Due process claims against Lanier and Downey.*

Plaintiff first appears to allege that Lanier and Downey violated his constitutional right to procedural due process of law by denying him his personal property without notice and hearing. [ECF No. 2 at 8]. As noted by Defendants' memorandum of law [ECF No. 12 at 5], "in a procedural due process claim, it is not the deprivation itself that is unconstitutional; rather it is the deprivation of personal interests without due process." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted). Thus, a procedural due process claim is only actionable when the State affords constitutionally inadequate process. *Id.* at 126. However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). [ECF No. 12 at 6]. The Fourth Circuit has held that the continued retention of property properly seized by state officials does not violate procedural due process when there are adequate post-deprivation

10

remedies for recovery of the property. *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008). [*Id.*]

As noted by Defendants, the State of West Virginia recognizes three methods by which a criminal defendant can recover seized property: (1) a motion under West Virginia Code § 62-1A-6; (2) a motion under Rule 41(e) of the West Virginia Rules of Criminal Procedure; or (3) a suit at common law for conversion. *See, e.g., Orme v. Huntington Police Dep't*, No. 3:22-cv-00049, 2022 WL 821082, at *2-3 (S.D.W. Va. 2022), *report and recommendation adopted*, 2022 WL 820235 (S.D.W. Va. 2022); *Brewer v. Sunyog*, No. 3:22-cv-00267, 2022 WL 2793594, at *3 (S.D.W. Va. 2022), *report and recommendation adopted*, 2022 WL 2794297 (S.D.W. Va. 2022). [ECF No. 12 at 6]. They further assert that federal courts in this state have repeatedly determined that a person seeking the return of property does not have a cognizable due process claim because of the availability of these post-deprivation remedies. [*Id.*] Plaintiff's complaint does not indicate that he filed a motion for the return of his property in Roane County and the docket sheet for his criminal case does not indicate that any such motion was filed. [ECF No. 2; ECF No. 11, Ex. 13]. Likewise, it does not appear that Plaintiff filed a civil suit for conversion before filing the instant federal complaint.

Here, it appears that Defendants unsuccessfully attempted to serve a forfeiture notice on Plaintiff. [ECF No. 11, Ex. 9; ECF No. 12 at 3, 9]. However, according to Defendants, "when service on Plaintiff could not be ensured, the authorities simply maintained the seized cash in its account until such time as

Plaintiff provided details on where to send it, and upon being informed, promptly remitted the seized funds back to Plaintiff." [ECF No. 11, Ex. 10 & 11; ECF No. 12 at 9]. Likewise, Defendants assert that Plaintiff never sought or obtained a court order directing that the money be returned to him, [ECF No. 11, Ex. 13], which means that there was no duty to return the seized property. *See* Syl. Pts. 1 and 2, *Pristine Pre-Owned Auto, Inc.*, 783 S.E.2d 585 (W. Va. 2016). [ECF No. 12 at 9]. As noted above, Plaintiff did not file a motion for return of the property in his criminal case; nor did he seek the available remedy of a civil action for conversion. Thus, I agree that, absent a showing that Plaintiff attempted to utilize such available post-deprivation remedies, his Fourteenth Amendment due process claim fails as a matter of law.

However, even if Plaintiff's complaint did sufficiently state a plausible due process claim, I further **FIND**, as asserted in Defendants' unopposed motion, that Defendant Downey would be entitled to absolute immunity on such a claim because his alleged conduct was taken as part of his duties as prosecuting attorney. A prosecutor is a "quasi-judicial" officer who enjoys absolute immunity when performing prosecutorial, as opposed to investigative or administrative, functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)) (granting absolute immunity for conduct of prosecutors that was "intimately associated with the judicial phase of the criminal process). "[T]he *Imbler* approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Id.,* at 271-72;

*see also Burns v. Reed*, 500 U.S. 478, 486 (1991). "Such immunity also 'extends to forfeiture proceedings." *Russell v. Myers*, 2008 WL 4441929, at *3 (D.S.C, 2008) (adopting and incorporating report and recommendation) (collecting cases); *Ehrlich v. Giuliani*, 910 F.2d 1220, 1224 (4th Cir.1990) (finding that that a prosecutor's role in locating and preserving assets for forfeiture is a prosecutorial function, entitling a prosecutor to absolute immunity). [ECF No. 12 at 7]. As asserted by Defendants, "Plaintiff's allegations against Prosecutor Downey go to the very heart of the function of a prosecuting attorney determining whether or not to initiate forfeiture proceedings." [ECF No. 12 at 8]. Thus, I **FIND** that Defendant Downey is entitled to judgment as a matter of law on this basis as well.

Defendants further assert that, because the decision on whether to seek forfeiture is made by the prosecutor under West Virginia Code § 60A-7-705a, Deputy Lanier had no further involvement with the seized funds after placing them into evidence and depositing them into the Asset Forfeiture Fund. [ECF No. 12 at 10]. Therefore, Defendants contend that Lanier is entitled to qualified immunity on Plaintiff's due process claim because he cannot demonstrate a due process violation by Lanier.

The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The determination of whether a state official receives the benefit of qualified immunity is a two-step process. Viewing the facts in

13

the light most favorable to the plaintiff, the court must decide (1) whether there was a constitutional violation, and (2) whether the right violated was clearly established at the time of the violation. *Id.* at 232. Whether a right is clearly established is a question of law, while a genuine question of material fact regarding whether the conduct actually occurred "must be reserved for trial." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A right is clearly established if "every 'reasonable official would [understand] that what he is doing violates that right.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, I **FIND** that Plaintiff cannot demonstrate that Lanier had any duty with respect to the state forfeiture process that would give rise to a due process obligation owed to Plaintiff. Thus, Plaintiff has not alleged a clearly established due process violation against Lanier, and he is entitled to qualified immunity and judgment as a matter of law on Plaintiff's due process claim.

    B.    *Fourth Amendment claim against Lanier.*

I further construe Plaintiff's complaint to raise Fourth Amendment claims against Defendant Lanier grounded in the stop and search of his vehicle and the seizure of his property. Defendants further read the complaint to also be challenging Plaintiff arrest. False arrest claims are also analyzed under the Fourth Amendment as they "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment." *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001).

To state a claim for false arrest under § 1983, a plaintiff must demonstrate that he was arrested or seized without probable cause. *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974) ("[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause."); *Brown v. Gilmore*, 278 F.3d 362, 367– 68 (4th Cir. 2002) (analyzing false arrest claim for whether seizure was unreasonable). Therefore, as noted by Defendants, whether Lanier violated Plaintiff' Fourth Amendment rights when he arrested him depends on whether he had probable cause to seize him. *Brown*, 278 F.3d at 368. "Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quotation omitted). Courts consider all circumstances known to the officer at the time of the arrest to determine whether there was probable cause. *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). The arresting officer's belief need not be correct, or even more likely true than false, so long as it is reasonable. *Texas v. Brown*, 460 U.S. 730, 742 (1983). [ECF No. 12 at 10-11].

Defendants assert that Lanier observed Plaintiff operating a motor vehicle without wearing a seatbelt and pulled him over with the reasonable intent to detain him long enough to issue a traffic citation. However, he then found that Plaintiff was driving on a suspended license and further discovered the suspected drugs in the cigarette pack, which were additional criminal violations under state law. Thus, Defendants assert that "[p]lainly there was probable cause to arrest Plaintiff." [ECF

15

No. 12 at 11]. Therefore, Defendants further assert that, "because probable cause existed, Deputy Lanier is entitled to qualified immunity on any Fourth Amendment claim for false arrest.

Lanier further contends that he is also entitled to qualified immunity on Plaintiff's Fourth Amendment claim concerning the search of his truck and seizure of the drugs and money found therein or on his person. Lanier first contends that he only entered the vehicle due to Plaintiff's request for his cigarettes. Plaintiff's complaint baldly asserts that he did not ask for his cigarettes and did not otherwise consent to a search of his vehicle, and summarily suggests that the alleged seatbelt violation was pretextual. Moreover, he did not properly oppose Defendants' motion, which relies upon the available video evidence submitted by both parties and the Report of Criminal Investigation, which was attached as Exhibit 5 to Defendants' motion. [ECF No. 2, Ex. B; ECF No. 11, Exs. 5 & 6].

The video evidence offered by both parties does not sufficiently portray Lanier's initial observance of the vehicle before pulling it over or the discussion between Lanier and Plaintiff at the initiation of the traffic stop and as Lanier first searched the vehicle. Specifically, the dash camera footage submitted by Plaintiff as Exhibit B to his complaint contains no sound and is captured at too far a distance to be dispositive evidence; thus, it is of limited evidentiary value at this stage of the proceedings.

However, the body camera footage offered as Exhibit 6 to Defendants' motion does contain sound and clearly demonstrates Plaintiff's agreement when Lanier

states that Plaintiff was not wearing his seatbelt, and acknowledging that he asked for his cigarettes, leading to the discovery of the alleged heroin. [ECF No. 11, Ex. 6 at 17:17:11-17:17:24; *see also* ECF No. 16 (hard copy of flash drive in Clerk's Office)]. Lanier then states on that video that he did not need consent and that he was going to search the vehicle, to which Plaintiff said "alright." [*Id.* at 17:17;24-17:17:30]. Plaintiff offers nothing to rebut this evidence other than his bare allegations in his complaint that he did not ask for the cigarettes, and did not otherwise consent to the search. Therefore, I **FIND** this body camera video evidence is undisputed.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Thus, it only prohibits searches and seizures that are unreasonable *Riley v. California*, 573 U.S. 373, 382 (2014) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). In determining reasonableness, the intrusion on an individual's Fourth Amendment interests must be balanced against the promotion of legitimate government interests. *United States v. Villamonte-Marquez*, 462 U.S. 579, 588 (1983).

As noted by Defendants, the Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Defendants contend that the discovery of the heroin was pursuant to a consensual search based upon Plaintiff's request for his cigarettes and that Plaintiff also told Lanier about the money in his pocket. [ECF No. 12 at 12]. They further contend that

17

the discovery of the money was reasonable as a search incident to a lawful arrest, a recognized exception to the requirement of a search warrant. [*Id.*] Their memorandum of law further states:

> This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may—incident to that arrest and without a warrant— search "the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969). "Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *New York v. Belton*, 453 U.S. 454, 457 (1981) (quoting *Chimel*, 395 U.S. at 763). As Plaintiff had been discovered with a controlled substance, and was being arrested, there was probable cause to search the vehicle in order to determine whether there was additional contraband located within it.

[*Id.* at 12-13].

Finally, Defendants assert that the search of Plaintiff's vehicle was a permissible inventory search in anticipation of his truck being towed in conjunction with his arrest. [*Id.* at 13]. Thus, they contend that the search and seizure of Plaintiff's property was reasonable under all these circumstances and did not violate Plaintiff's Fourth Amendment rights. [*Id.*] Consequently, they further assert that Lanier is entitled to qualified immunity on Plaintiff's Fourth Amendment claim. [*Id.*]

Again, Plaintiff has not sufficiently rebutted Defendant's evidence and arguments. The undisputed body camera footage and investigative report support the finding that Plaintiff consented to the entry of his vehicle to obtain his cigarettes, leading to the discovery of the suspected heroin. That undisputed evidence further demonstrates that Plaintiff was arrested for driving on a suspended license and possession of a controlled substance and his arrest reasonably permitted the search

18

of the vehicle and his person incident to the arrest and for inventory purposes, leading to the seizure of the money. Thus, I **FIND** that there is no genuine issue of material fact that the search of Plaintiff's vehicle and the seizure of his property was reasonable under the circumstances and did not violate the Fourth Amendment. Therefore, Defendant Lanier is entitled to qualified immunity and judgment as a matter of law on Plaintiff's Fourth Amendment claims.

### C. *Claim(s) against Dever.*

The complaint also alleges that Defendant Dever, the Roane County Sheriff, "failed to train, educate, and supervise Lanier concerning traffic stops and searches." [ECF No. 2 at 9]. However, he does not specify whether he is bringing this claim against Dever as a claim of intentional conduct under the federal constitution, or as a state law claim grounded in negligence. Defendants' unopposed motion presumes that it is a claim of negligent training and supervision. [ECF No. 12 at 13-15]. Their memorandum of law asserts that "[n]egligent training and supervision 'are governed by basic negligence principles[,]'" *see Reese v. Hannah*, 2024 WL 3607471, at *5 (S.D.W. Va. 2024) (citations omitted), and that Plaintiff has wholly failed to allege facts sufficient to meet the required elements of negligence and satisfy the *Iqbal/Twombly* plausibility standard required of him." [ECF No. 12 at 13-14]. I agree.

To the extent that Plaintiff, instead, intended to bring his failure to train and supervise claim against Dever under the federal constitution, he likewise fails to state a plausible claim thereunder. In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the

Court held that supervisors may be liable for the actions of their subordinates where the supervisor, <u>by his own conduct</u>, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

To state such a claim, Plaintiff must plausibly allege (1) that a policymaker had actual or constructive knowledge that his subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury; (2) that his response evidenced deliberate indifference or tacit authorization; and (3) a causal link between the inaction and Plaintiff's alleged injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). A "pervasive and unreasonable risk" requires allegations of widespread conduct occurring on several occasions. *Id.* Here, Plaintiff relies only on his own incident on November 7, 2023. [ECF No. 2 at 10]. He identifies no prior similar incidents, no facts suggesting that Dever was aware of any pattern of wrongful traffic stops, searches, or seizures by his subordinates, and no allegations or evidence tying any of Dever's decisions or inaction to Plaintiff's stop, search, or arrest.

In the absence of well-pled facts supporting each essential element, Plaintiff's failure-to-supervise claim does not cross the line from possible to plausible under *Twombly* and *Iqbal*. *See also Tilley v. Pierson*, No. 2:25-cv-00259, 2025 WL 3207816,

at *10 (S.D.W. Va. Nov. 17, 2025). Accordingly, Plaintiff's complaint fails to state any plausible claim against Dever.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [ECF No. 11] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:    February 26, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE